UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                  )
                                  )
UNITED STATES OF AMERICA,         )
                                  )
                Petitioner,       )
                                  )
        v.                        )  CIVIL ACTION
                                  )  NO. 12-10973-WGY
ZHONG H. CHEN,                    )
                                  )
                Respondent.       )
_____)
```

MEMORANDUM & ORDER

YOUNG, D.J.                                          July 3, 2013

## I.   INTRODUCTION

The United States of America (the "United States") brings

this petition on behalf of the Internal Revenue Service (the

"IRS") to enforce an administrative summons served by the IRS on

Zhong H. Chen ("Chen") pursuant to 26 U.S.C. section 7604(a).

Pet. Enforce IRS Summons ("IRS Pet.") ¶ 1, ECF No. 1.  In support

of its summons, the IRS alleges that its request for documents is

necessary in order that it may "examine the summonsed records to

properly determine the federal tax liabilities of Chu H. Ng and

Zhong H. Chen for the taxable period ending December 31, 2008."

Id. ¶ 10.  Chen, however, resists the United States's enforcement

petition on several grounds: Chen argues, first, that the IRS has

1

failed to satisfy the relevant requirements for obtaining judicial enforcement of its summons, Resp't's Answer & Defenses Pet. Enforce IRS Summons ("Resp't's Answer") ¶ 21, ECF No. 7, and, moreover, that the IRS has waived the putative right to enforcement that it claims, id. ¶ 23; second, that the IRS is employing its administrative power for an ulterior -- and improper -- purpose, Resp't's Reply Gov't's Mem. Law Supp. United States' Pet. ("Reply") 13, ECF No. 13; and, third, that he is protected from having to furnish the documents the IRS seeks in virtue of his Fifth Amendment privilege against self-incrimination, Resp't's Answer ¶ 22.

## A. Undisputed Facts

The IRS has been attempting to assess the tax liabilities of Chu H. Ng and Zhong H. Chen for the taxable period ending December 31, 2008.  IRS Pet. ¶ 10.  In furtherance of this objective, the IRS served a summons on Chen dated September 12, 2011, which demanded that he appear before revenue agent David McClung ("McClung") on September 27, 2011, at 9 AM at the IRS's Boston office to testify and furnish for examination the records described in the summons.  Id. ¶ 6.  Specifically, the IRS asked that Chen produce: (1) "original books and records used to prepared the 2008 individual income tax return"; (2) "copies of bank statements and deposit slips for [Chen's] business and personal (domestic and foreign) savings, checking, and investment

2

accounts for the period January 1, 2008 through December 31, 2008"; and (3) "copies of records and documentation concerning business and personal receipts."  IRS Pet., Ex. 2, Summons 1, ECF No. 1-2.  Chen has failed to comply with the IRS's document summons for documents that the IRS alleges are "necessary . . . to properly determine the federal tax liabilities of Chu H. Ng and Zhong H. Chen for the taxable period ending December 31, 2008."  IRS Pet. ¶ 4.  The IRS has expressed a particular interest in obtaining records which evidence Chen's maintaining offshore bank accounts.  Mem. Law Supp. United States' Pet. ("Mem. Supp.") 11, ECF No. 9.

Although Chen appeared at the September 27, 2011, meeting, he failed to produce the documents that the IRS had requested. See IRS Pet. ¶ 8.  Instead of producing the relevant documents or answering McClung's questions, Chen read the following statement, seeking to invoke his Fifth Amendment privilege against self-incrimination: "On advice of counsel, I refuse to answer on the grounds that a full and complete answer may waive certain protections afforded me under the 5th Amendment to the U.S. Constitution."  Resp't's Answer ¶ 19.  The United States therefore petitions this Court on the IRS's behalf for an order to enforce the administrative demand it has served on Chen.  IRS Pet.

**B. Procedural Posture**

On May 31, 2012, the United States filed a petition to enforce the IRS's summons, <u>id.</u>, which Chen answered on July 9, 2011, Resp't's Answer.  On July 20, 2012, the United States filed a memorandum in support of its petition to enforce, Mem. Supp., to which Chen responded on July 24, 2012, Reply.  The United States filed its own rejoinder on July 31, 2012, United States' Sur-Reply, ECF No. 14, to which Chen responded on August 15, 2012, Resp't's Resp. United States' Sur-Reply, ECF No. 17.  On August 20, 2012, the United States filed a sur-sur-reply to Chen's response.  United States' Sur-Sur-Reply, ECF No. 20.

**C. Federal Jurisdiction**

This Court has original jurisdiction pursuant to 26 U.S.C. Sections 7402(b) and 7604(a) and 28 U.S.C. sections 1340 and 1345.

**II. ANALYSIS**

The Secretary of the Treasury (the "Secretary") is empowered to issue summonses pursuant to 26 U.S.C. section 7602(a) ("Section 7602"); he has, in turn, delegated his authority, through the IRS, to McClung pursuant to 26 C.F.R. section 301.7602-1 and IRS Delegation Order No. 4 (as revised).  <u>See</u> IRS Pet. 1.  Section 7602 authorizes the Secretary to act as follows:

> For the purpose of ascertaining the correctness of any
> return . . . [or] determining the liability of any person
> for any internal revenue tax . . ., the Secretary is

> authorized . . . [t]o summon the person liable for
> tax . . . to appear before the Secretary at a time and
> place named in the summons and to produce such books,
> papers, records, or other data, and to give such
> testimony, under oath, as may be relevant or material to
> such inquiry.

26 U.S.C. § 7602(a)(2).  The IRS therefore has broad powers under
the Internal Revenue Code with respect to the gathering of
information for the purposes of determining tax liability.
United States v. Arthur Young & Co., 465 U.S. 805, 816 (1984).
Section 7602(d), however, adds a caveat to the IRS's broad power
to issue administrative summonses which serves to circumscribe
the IRS's power in situations where a Justice Department referral
is in effect.  26 U.S.C. § 7602(d); 26 C.F.R. § 301.7602-1(c).
Where a referral has been made to the Justice Department, the IRS
is proscribed from obtaining information by means of the
administrative summons process.  26 U.S.C. § 7602(d).

## A. The Powell Standard

In order to obtain enforcement of its summons before a
federal district court, the IRS must satisfy four criteria that
the Supreme Court enumerated in United States v. Powell, 379 U.S.
48 (1964):

> [1] [The investigation has been] conducted pursuant to a
> legitimate purpose, [2] . . . the inquiry may be relevant
> to the purpose, [3] . . . the information sought is not
> already within the Commissioner's possession, and
> [4] . . . the administrative steps required by the Code
> have been followed -- in particular, . . . the 'Secretary
> or his delegate,' after investigation, has determined the
> further examination to be necessary and has notified the
> taxpayer in writing to that effect.

Id. at 57-58.  Although the IRS bears the prima facie burden of
showing that the four Powell criteria are met, this burden is, to
borrow the First Circuit's language, "not taxing, so to speak."
United States v. Gertner, 65 F.3d 963, 966 (1st Cir. 1995).  The
First Circuit has held, in particular, that the IRS may satisfy
the burden by asserting in the "affidavit of the investigating
agent that the requirements are satisfied."  United States v.
Lawn Builders of New Eng., Inc., 856 F.2d 388, 392 (1st Cir.
1988) (per curiam) (quoting Liberty Fin. Servs. v. United States,
778 F.2d 1390, 1392 (9th Cir. 1985) (per curiam)).  Once the IRS
has satisfied its prima facie burden through the affidavit of one
of its officers, the burden of proof shifts to the summonsed
taxpayer to "rebut the good-faith presumption that arises in
consequence of the government's prima facie case."  Gertner, 65
F.3d at 967.[1]

The taxpayer may rebut the prima facie case by disproving
any one of the four Powell factors or by showing -- more
generally -- that enforcement of the IRS summons would constitute
an abuse of the court's process.  Sugarloaf Funding, LLC v. U.S.

---

[1] This is an unfortunate use of the word "presumption,"
since a true presumption shifts only the burden of going forward
and not the burden of persuasion.  See, e.g., St. Mary's Honor
Ctr. v. Hicks, 509 U.S. 502 (1993).  It is more accurate to say
that once the IRS makes its prima facie case under Powell, the
burden to rebut it in order to withhold production falls on the
taxpayer.

Dep't of the Treasury, 584 F.3d 340, 346 (1st Cir. 2009).  An abuse of process would occur "if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." Powell, 379 U.S. at 58.

In attempting to rebut the good faith of the IRS, "[t]he taxpayer's burden is heavy." Sugarloaf Funding, 584 F.3d at 346. In particular, the taxpayer "must allege specific facts and evidence to support his allegations." Id. (quoting Sterling Trading, LLC v. United States, 553 F. Supp. 2d 1152, 1155–56 (C.D. Cal. 2008)) (internal quotation marks omitted).  The Second Circuit has further articulated the taxpayer's burden, including the degree of factual specificity with which his allegations must be pleaded:

> Although mere conclusory allegations of wrongdoing unsupported by any evidence from which a court might draw an inference of abuse are insufficient to rebut the government's prima facie showing of a proper investigatory purpose, the taxpayer has met his burden if he alleges specific facts "from which a court might infer a possibility of some wrongful conduct by the Government."

United States v. Millman, 765 F.2d 27, 29 (2d Cir. 1985) (quoting United States v. Kis, 658 F.2d 526, 540 (7th Cir. 1981)).

### 1. The IRS Has Satisfied Its Prima Facie Burden

The IRS has satisfied its prima facie burden in relation to its administrative power to summons documents pursuant to Section

7602.  The affidavit of its revenue officer, and the IRS's
petition to enforce its summons, each allege compliance with all
of the Powell factors.  See IRS Pet., Ex. 1, Decl. David McClung
("McClung Decl.") ¶ 11, ECF No. 1-1; IRS Pet. ¶¶ 9-14.  In
addition, the IRS alleges in its petition that "there is no
'Justice Department referral,' as that term is described in
Section 7602(d)(2) of the Internal Revenue Code, in effect with
respect to Chu H. Ng and Zhong H. Chen for the tax year under
examination."  IRS Pet. ¶ 13.  McClung makes the same allegation
in his supporting declaration.  McClung Decl. ¶ 10.

### 2. Chen Has Failed to Rebut the Prima Facie Evidence that the IRS has Satisfied the Powell Factors

Chen, in his answer to the IRS's petition, denies the IRS's
claim that it has satisfied the Powell factors.  Resp't's Answer
¶¶ 9-11.  With the exception of Chen's claim that the IRS has
failed to satisfy the third Powell criterion, id. ¶ 21, Chen
fails to offer any facts in support of his allegations, id.  Chen
neither alleges facts with the required degree of specificity nor
furnishes this Court with sufficient evidence to rebut this heavy
burden.  See Sugarloaf Funding, 584 F.3d at 346 ("The taxpayer's
burden is heavy. . . .").

Chen alleges that the IRS has failed to satisfy the third
Powell criterion on account of the fact that the "IRS is in
possession of at least some of the documents sought in the
summons."  Resp't's Answer ¶ 21.  The First Circuit, however, has

8

already rejected a similar argument, see Sugarloaf Funding, 584
F.3d at 350, and at least two district courts have rejected
identical arguments, see Sterling Trading, 553 F. Supp. 2d at
1160; PAA Mgmt., Ltd. v. United States, Nos. 91 C 168, 91 C 169
and 91 C 170, 1992 WL 346314, at *5 (N.D. Ill. Nov. 19, 1992)
("The IRS . . . should be afforded the opportunity to review
records of the same PAA transactions maintained by PAA
third-party recordkeepers, in order to ascertain whether the
information in each set of documents is consistent."). Just as
the First Circuit has held that "the IRS is entitled to obtain
relevant records from third parties to compare for accuracy any
records obtained from the taxpayer," Sugarloaf Funding, 584 F.3d
at 350, it ought be allowed to summons documents from the
taxpayer to verify any records it may already have in its
possession from third parties.

     The First Circuit cites to the Central District of
California's opinion in Sterling Trading, LLC v. United States,
553 F. Supp. 2d 1152, where the district court held that even
where the IRS "had already received the materials summoned from
[a third party], it would nevertheless be empowered [to] request
them from [the defendant], because a 'thorough investigation' can
involve 'review [of] records of the same . . . transactions . . .
in order to ascertain whether the information in each set of
documents is consistent,'" id. at 1161 (fourth & fifth

9

alterations in original) (quoting <u>PAA Mgmt.</u>, 1992 WL 346314, at *5).  <u>Sugarloaf Funding</u>, 584 F.3d at 350.  The IRS is thus entitled to review documents obtained from a variety of sources in order to verify the consistency of their content.  That the IRS has asked Chen to produce documents when it already has certain -- incomplete -- documents relating to the same subject matter in its possession, McClung Decl. ¶ 7, is not (without more) indicative of the agency's bad faith; all it need indicate is the IRS's intention to conduct a thorough investigation of Chen's tax liability.

### 3. The IRS Has Not Waived Its Right to Enforce the Summons

Chen claims that "Revenue Agent McClung never asked the Respondent to produce the documents at the September 27, 2011 meeting.  Thus the IRS has waived its right to now enforce the summons with respect to the production of documents."  Resp't's Answer ¶ 23.  This conclusion does not follow from the premise. In support of his assertion, Chen cites to a Fifth Circuit case, <u>United States</u> v. <u>Malnik</u>, 489 F.2d 682 (5th Cir. 1974).  Resp't's Answer ¶ 23.  Even in his parenthetical explanation of the case, however, Chen points to the relevant distinction between <u>Malnik</u> and the facts before this Court.  To use Chen's words, <u>Malnik</u> concerned an "<u>agreement</u> with taxpayer to waive appearance . . . [that] waived IRS's rights."  <u>Id.</u> (emphasis added).  There is no suggestion here, either in the responsive pleadings or in Chen's

10

factual allegations, that the IRS had come to any agreement with the taxpayer which might constitute a waiver of the IRS's enforcement rights.

Because McClung attested to the satisfaction of each of the Powell factors in his affidavit, see McClung Decl. ¶ 11, the IRS has established a prima facie case for enforcement of its summons.  McClung's declaration supports the conclusion that the IRS is seeking to exercise its power for a proper purpose, a conclusion which Chen has been unable to rebut.

**B. Chen's Fifth Amendment Privilege Against Self-Incrimination**

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  This privilege against self-incrimination applies only to testimonial communications. See Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 302 (1967) ("The items of clothing involved in this case are not 'testimonial' or 'communicative' in nature. . . .").  In order for the relevant person's communication to be deemed testimonial, the communication "must itself, explicitly or implicitly, relate a factual assertion or disclose information."  Doe v. United States, 487 U.S. 201, 210 (1988).  The privilege can be asserted in "any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any disclosures which the witness reasonably believes could be

used in a criminal prosecution or could lead to other evidence
that might be so used." Kastigar v. United States, 406 U.S. 441,
444-45 (1972) (footnotes omitted).

The burden of proving the existence of a valid Fifth
Amendment privilege is on the person claiming that privilege.
See In re Grand Jury Subpoena, 973 F.2d 45, 50 (1st Cir. 1992)
(per curiam); Bayview Loan Servicing, LLC v. McNaughton, No.
2:05-CV-254, 2007 WL 2433996, at *3 (W.D. Mich. Aug. 22, 2007);
Herman v. Galvin, 40 F. Supp. 2d 27, 28 (D. Mass. 1999) (Wolf,
J.).

The Supreme Court has recently affirmed that, in the context
of requests for documents, the Fifth Amendment privilege does not
apply to incriminating facts that were generated prior to the
demand that these facts be produced. See United States v.
Hubbell, 530 U.S. 27, 35-37 (2000) ("[A] person may be required
to produce specific documents even though they contain
incriminating assertions of fact or belief because the creation
of those documents was not 'compelled' within the meaning of the
privilege." Id. at 35-36). Deriving its character from the same
lack-of-compulsion analysis, the required records doctrine forms
an exception to the Fifth Amendment privilege against
self-incrimination.

### 1. The Required Records Doctrine Is an Exception to the Fifth Amendment Privilege

The Supreme Court has noted that "the physical custody of incriminating documents does not of itself protect the custodian against their compulsory production."  Shapiro v. United States, 335 U.S. 1, 17 (1948) (quoting Wilson v. United States, 221 U.S. 361, 380 (1911)) (internal quotation mark omitted).  There are certain documents as to which "the custodian has voluntarily assumed a duty which overrides his claim of privilege."  Id. Such documents include "records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation." Id.

Shapiro v. United States, 335 U.S. 1, concerned the subpoena of a fruit wholesaler's business records, which the Emergency Price Control Act required that he preserve.  See id.  In response to the subpoena, the wholesaler (William Shapiro) sought to rely on his Fifth Amendment privilege against self-incrimination.  Id. at 4-5.  The Supreme Court rejected Shapiro's claim of constitutional privilege, reasoning that he had voluntarily assumed a duty to maintain records (equivalent to a waiver of his Fifth Amendment privilege) when he chose to engage in the regulated activity.  Id. at 17.

13

Twenty years after it decided <u>Shapiro</u>, the Supreme Court identified three premises which it saw as underpinning the required records doctrine:

> The premises of the doctrine, as it is described in <u>Shapiro</u>, are evidently three: first, the purposes of the United States' inquiry must be <u>essentially regulatory</u>; second, information is to be obtained by requiring the preservation of records of a kind which the regulated party has <u>customarily kept</u>; and third, the records themselves must have assumed "<u>public aspects</u>" which render them at least analogous to public documents.

<u>Grosso</u> v. <u>United States</u>, 390 U.S. 62, 67-68 (1968) (emphases added).  It is important to note that the Supreme Court in <u>Grosso</u> v. <u>United States</u>, 390 U.S. 62, used the language of "<u>premises</u>" in relation to these elements.  <u>Id.</u> at 67 (emphasis added).  In using the language of premises (or, assumptions about the applicability) of the required records doctrine, rather than referring to <u>necessary</u> elements of the doctrine, the Supreme Court suggested that the premises it traced in <u>Grosso</u> admit of a certain degree of flexibility.

> **a. The Recordkeeping Provisions of the Bank Secrecy Act Fall within the Scope of the Required Records Exception to the Fifth Amendment Privilege**

The recordkeeping provisions of the Bank Secrecy Act, 31 U.S.C. § 5311, fall within the required records exception to the Fifth Amendment.  <u>United States</u> v. <u>Miller</u>, 425 U.S. 435, 439 (1976); <u>accord</u> <u>In re Special Feb. 2011-1 Grand Jury Subpoena Dated Sept. 12, 2011</u>, 691 F.3d 903, 909 (7th Cir. 2012) ("We need not repeat the Ninth Circuit's thorough analysis [in <u>In re M.H.</u>,

14

648 F.3d 1067 (9th Cir. 2011), <u>cert. denied</u> <u>sub nom.</u> <u>M.H.</u> v.
<u>United States</u>, 133 S. Ct. 26 (2012)], determining that records
under the Bank Secrecy Act fall within the exception."); <u>In re</u>
<u>M.H.</u>, 648 F.3d 1067 (noting that a witness may not invoke the
Fifth Amendment in support of her refusal to hand over subpoenaed
documents where those documents fall within the required records
exception).  In <u>United States</u> v. <u>Miller</u>, 425 U.S. 435, the
Supreme Court affirmed that "the recordkeeping requirements of
the Bank Secrecy Act had been held to be constitutional on their
face in [<u>California Bankers Ass'n</u> v. <u>Shultz</u>, 416 U.S. 21
(1974)]."  <u>Miller</u>, 425 U.S. at 439.

It is well established that the United States has the power
to regulate offshore banking as part of its power to "regulate
Commerce with foreign Nations."  U.S. Const. art. I, § 8, cl. 3.
The recordkeeping requirements of the Bank Secrecy Act, moreover,
fall within the required records doctrine, satisfying the three
<u>Grosso</u> premises.

First, the purpose of the United States's inquiry is
"essentially regulatory."  <u>See</u> <u>Grosso</u>, 390 U.S. at 68.  In order
to establish the first premise, it is necessary to show that the
relevant legislation is generally applicable and does not
specifically target criminal activity.  It must therefore be
directed toward "an essentially noncriminal and regulatory area
of inquiry," <u>Albertson</u> v. <u>Subversive Activities Control Bd.</u>, 382

U.S. 70, 79 (1965), and not targeted "at a highly selective group
inherently suspect of criminal activities," id.  Unlike the
requirement in Albertson v. Subversive Activities Control Bd.,
382 U.S. 70, that those to whom the statute applied register
their involvement in subversive activities, it is not inherently
illegal for a person to engage in the practice of offshore
banking.  Even though the recordkeeping provisions of the Bank
Secrecy Act are "focused in large part on the acquisition of
information to assist in the enforcement of the criminal laws,"
Shultz, 416 U.S. at 76, "the fact that a legislative enactment
manifests a concern for the enforcement of the criminal law does
not cast any generalized pall of constitutional suspicion over
it," id. at 77.  Because there is no suggestion that the
recordkeeping requirements of the Bank Secrecy Act are merely a
guise for the enforced disclosure of criminal misconduct, they
may be deemed "essentially regulatory" within the meaning of
Grosso.

The recordkeeping requirements of the Bank Secrecy Act also
satisfy the second Grosso premise in that records relating to
foreign banking transactions are "customarily kept."  31 C.F.R.
section 1010.420 ("Section 1010.420") requires that (1)
"[r]ecords of accounts required by § 1010.350 to be reported to
the Commissioner of Internal Revenue shall be retained by each
person having a financial interest in . . . any such account,"

and (2) that "[s]uch records shall be retained for a <u>period of 5 years</u> and shall be kept at all times available for inspection as authorized by law."  31 C.F.R. § 1010.420 (emphases added). Unlike records relating to a person's gambling expenses, such as those at issue in <u>Marchetti</u> v. <u>United States</u>, 390 U.S. 39 (1968), the records required to be kept by the Bank Secrecy Act pursuant to Section 1010.420 customarily would be kept by a person engaged in offshore banking activities.  As the Ninth Circuit has noted, offshore banking customers would, first, retain documents that they "must report . . . to the IRS every year as part of the IRS's regulation of offshore banking," <u>In re M.H.</u>, 648 F.3d at 1076, and, second, would need to retain such information in order "to access their foreign bank accounts," <u>id.</u>

     The recordkeeping provisions of the Bank Secrecy Act, similarly, satisfy the third <u>Grosso</u> premise, which commands that the records required to be kept have "assumed 'public aspects.'" <u>Grosso</u>, 390 U.S. at 68.  Just as the Supreme Court held in <u>Shapiro</u> that "it cannot be doubted that the sales record which petitioner was required to keep as a licensee under the Price Control Act has 'public aspects,'" 335 U.S. at 34, so too here the records which Chen is required to keep, as a condition of engaging in an activity which Congress may legitimately regulate (namely, offshore banking), have attained "public aspects" within the meaning of <u>Grosso</u>.

The IRS asks this Court to "overrule Respondent's Fifth Amendment objection with respect to the production of records that fall within the record keeping requirements of the Bank Secrecy Act," Mem. Supp. 5, because Chen has, by maintaining offshore bank accounts, voluntarily chosen to engage in a regulated activity.  As the Seventh Circuit has noted, the "voluntary choice to engage in an activity that imposes record-keeping requirements under a valid civil regulatory scheme carries consequences, perhaps the most significant of which, is the possibility that those records might have to be turned over upon demand, notwithstanding any Fifth Amendment privilege."  In re Special Feb. 2011-1 Grand Jury Subpoena Dated Sept. 12, 2011, 691 F.3d at 909.

Although Chen asserts that "if the Respondent were to produce documents in response to the IRS's broad based document request set forth in the summons, he would be confronted by substantial and real hazards of self-incrimination," Resp't's Answer 5, at least some of the documents subject to the IRS's summons relate to Chen's offshore banking activities.  Insofar as the summons relates to documents concerning Chen's offshore banking activities (which fall within the scope of the recordkeeping requirements of the Bank Secrecy Act), the summons falls within the required records exception to the Fifth Amendment privilege against self-incrimination.

18

Chen, however, also argues that even if the required records doctrine applies to the <u>content</u> of the documents he allegedly possesses, it does not apply to preclude his invocation of his Fifth Amendment privilege as regards the self-incrimination that would arise from his <u>act of producing</u> the requested documents.

### b. The Required Records Doctrine Applies to the Act of Production Privilege

The act of producing summonsed documents "may have a compelled testimonial aspect." <u>Hubbell</u>, 530 U.S. at 36.  The taxpayer's act of producing the documents in response to a summons implicitly communicates factual statements as to the existence, control, and authenticity of those documents.  <u>Id.</u> at 37.  As the Supreme Court has noted, "[w]hether the constitutional privilege protects the answers to such questions, or protects the act of production itself, is a question that is distinct from the question whether the unprotected contents of the documents themselves are incriminating."  <u>Id.</u>  The required records exception, however, applies as to both the possible incrimination arising from disclosing the contents of the summonsed documents and Chen's asserted act of production privilege.  <u>See</u> <u>Baltimore City Dep't. of Soc. Servs.</u> v. <u>Bouknight</u>, 493 U.S. 549, 555-56 (1990) ("Bouknight may not invoke the privilege to resist the production order because she has assumed custodial duties related to production and because

19

production is required as part of a noncriminal regulatory

regime."). As the Seventh Circuit noted in In re Special

February 2011-1 Grand Jury Subpoena Dated September 12, 2011, 691

F.3d 903,

> One of the rationales, if not the main rationale,
> behind the Required Records Doctrine is that the
> government or a regulatory agency should have the means,
> over an assertion of the Fifth Amendment Privilege, to
> inspect the records it requires an individual to keep as
> a condition of voluntarily participating in that
> regulated activity. That goal would be easily frustrated
> if the Required Records Doctrine were inapplicable
> whenever the act of production privilege was invoked.

Id. at 908-09 (citation omitted).

Thus, this Court holds that (1) the required records

doctrine is an exception to the Fifth Amendment privilege against

self-incrimination; (2) the recordkeeping provisions of the Bank

Secrecy Act fall within the scope of this exception; and,

therefore, (3) Chen may not rely on the Fifth Amendment to resist

production of the documents falling within the scope of the

recordkeeping provisions of the Bank Secrecy Act, neither on

account of their allegedly incriminating content nor on account

of the act of production doctrine.

### c. The Bank Secrecy Act Is Constitutional Both on Its Face and as Applied to Chen

The ruling which affirms that the recordkeeping provisions

of the Bank Secrecy Act fall within an exception to the Fifth

Amendment privilege against self-incrimination settles the

question as to the recordkeeping requirement's facial

constitutionality.  Chen next attempts to raise an <u>as-applied</u>
challenge to the IRS's reliance on the Bank Secrecy Act.  <u>See</u>
Resp't's Resp. United States' Sur-Reply 2.  Chen argues that the
IRS's reliance on the recordkeeping provisions of the Bank
Secrecy Act is unconstitutional as applied to him.  <u>Id.</u>

      Chen's argument, however, fails to resonate.  In raising any
kind of constitutional challenge to a statute (whether facial or
as applied), the initial question is whether the relevant
constitutional right is engaged.  In other words, before this
Court can decide whether the Fifth Amendment privilege against
self-incrimination trumps the IRS's administrative power, it must
first ask whether Chen's privilege is implicated by the IRS
summons.  There are a number of reasons why the factual predicate
necessary to invoke the Fifth Amendment privilege may not here be
satisfied.  One reason might be that the evidence in question is
not testimonial in character.  <u>See</u> <u>Doe</u>, 487 U.S. at 210.  Or the
privilege may be deemed to have been waived by the person seeking
to rely on it.  <u>See</u> <u>Bouknight</u>, 493 U.S. at 555-56.

      The Seventh Circuit has specifically addressed the putative
distinction between facial and as-applied challenges in the
context of the recordkeeping requirements of the Bank Secrecy
Act, explaining persuasively that the required records exception
to the Fifth Amendment privilege against self-incrimination (as
enumerated in <u>Shapiro</u>) establishes more than facial

constitutionality alone.  <u>In re Special Feb. 2011-1 Grand Jury</u> <u>Subpoena Dated Sept. 12, 2011</u>, 691 F.3d at 907 ("But <u>Shapiro</u> did more than set the constitutional parameters for record-keeping requirements; it determined that the Fifth Amendment is not a barrier to the enforcement of a valid civil regulatory scheme.").

Because Chen is deemed to have waived his Fifth Amendment privilege against self-incrimination by choosing to engage in the regulated activity, there is no Fifth Amendment right applicable in this context as to which he could make an as-applied claim. Given that the required records doctrine is applicable, and the records sought by the IRS relating to Chen's offshore banking activities fall within the doctrine, Chen must comply with the summons insofar as it relates to those documents implicated by the recordkeeping requirements of the Bank Secrecy Act.

### 2. Chen's Fifth Amendment Privilege as Applied to His Non-Offshore-Banking Documents

Having argued that this Court could enforce the summons with respect to the documents that are implicated by the recordkeeping requirements of the Bank Secrecy Act, the IRS asks this Court to "rule upon the Respondent's Fifth Amendment objection with respect to all other summonsed documents after an <u>in camera</u> privilege review of those documents."  Mem. Supp. 5.

Although the Supreme Court has held that the filing of tax returns is one of the "many burdens [an organized society imposes] on its constituents," <u>California</u> v. <u>Byers</u>, 402 U.S. 424,

427 (1971), it notes that "there is some possibility of
prosecution -- often a very real one -- for criminal offenses
disclosed by or deriving from the information that the law
compels a person to supply," id. at 428.  As already noted, such
information might incriminate Chen merely by virtue of Chen's act
of production.  See Smith v. Richert, 35 F.3d 300, 302 (7th Cir.
1994) ("If a subpoena demanded all the documents possessed by the
subpoenaed person concerning some subject, by producing them the
person would be acknowledging that he possessed them and that
they concerned the subject in question, and if this
acknowledgment was self-incriminating he could not be forced to
produce them.").  This is true notwithstanding the fact that,
save for the act of production privilege, "the government could
compel the production of nonrequired records, because their
creation, and the setting forth of potentially self-incriminating
facts entailed by that creation, were the author's voluntary
choice." Id.  In these circumstances, where "the Court is
confronted with the question of a compelled disclosure that has
an incriminating potential, the judicial scrutiny is invariably a
close one." Byers, 402 U.S. at 427.

Within the context of IRS document requests, however, the
First Circuit has held that a "blanket objection to the issuance
of an IRS summons based on the Fifth Amendment privilege against
self-incrimination is not a viable defense." United States v.

23

<u>Allee</u>, 888 F.2d 208, 212 (1st Cir. 1989) (per curiam).  Although Chen did "appear before the IRS agent and claim[ed] the privilege on a question-by-question . . . basis," <u>id.</u>, his "blanket" objection in response to the summoned documents does not (of itself) satisfy the First Circuit's requirements for the invocation of the privilege, <u>see</u> <u>id.</u>  As the Supreme Court noted in <u>Fisher</u> v. <u>United States</u>, 425 U.S. 391 (1976), the taxpayer may not "avoid compliance with the subpoena merely by asserting that the item of evidence which he is required to produce contains incriminating writing."  <u>Id.</u> at 410.

Having held that Chen's Fifth Amendment privilege is engaged, this Court orders <u>in camera</u> review of the summoned documents which do not fall within the scope of the recordkeeping requirements of the Bank Secrecy Act in order to determine, on a document-by-document basis, whether Chen's assertion of his Fifth Amendment privilege is made out.

**V. CONCLUSION**

For the foregoing reasons, this Court hereby GRANTS the petition to enforce the IRS's administrative summons to the extent that Chen's documents fall within the scope of the recordkeeping provisions of the Bank Secrecy Act, 31 U.S.C. § 5311.

With respect to the summonsed documents which fall outside the scope of the recordkeeping provisions of the Bank Secrecy

24

Act, this Court ORDERS Chen, within thirty days of the date of this order, to submit under seal to this Court a document-by-document explanation of his Fifth Amendment assertions and the documents which substantiate such assertions.  Such submissions shall not constitute a waiver of Chen's Fifth Amendment privilege as to any document so submitted.  The failure timely to submit such documents for _in camera_ review shall operate as a waiver of Chen's Fifth Amendment privilege as to any such document within the scope of the administrative summons.

   **SO ORDERED.**


                                   /s/ William G. Young
                                   WILLIAM G. YOUNG
                                   U.S. DISTRICT JUDGE